## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**EMILY K.,**[1]

        **Plaintiff,**

                                  **Case No. 3:22-cv-3279**

    **v.**                               **Magistrate Judge Norah McCann King**

**LELAND DUDEK,**[2]
**Acting Commissioner of Social Security,**

        **Defendant.**

## OPINION AND ORDER

      This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the applications of Plaintiff Emily K. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq.* Plaintiff appeals from the final decision denying those applications. After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court the Court reverses the Acting Commissioner's decision and remands the matter for further proceedings.[3]

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Leland Dudek, the current Acting Commissioner of Social Security, is substituted as Defendant in his official capacity. *See* Fed. R. Civ. P. 25(d).

[3] Because the Court is able to resolve this matter on the briefs, Plaintiff's request for oral argument, *Plaintiff's Moving Brief*, ECF No. 9, p. 39, is denied.

## I.    PROCEDURAL HISTORY

On May 14, 2019, Plaintiff filed applications for disability insurance benefits and supplemental security income, alleging that she has been disabled since June 1, 2018,[4] based on a number of physical and mental impairments. R. 124–25, 154–76, 300–26. The applications were denied initially and upon reconsideration. R. 170–76, 182–84. Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). R. 185–92. ALJ Scott Tirrell held a hearing on May 7, 2021, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 37–83. In a decision dated July 30, 2021, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from June 1, 2018, Plaintiff's alleged disability onset date, through the date of that decision. R. 15–31. That decision became final when the Appeals Council declined review on April 1, 2022. R. 1–6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On October 3, 2023, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 19.[5] On that same day, the case was reassigned to the undersigned. ECF No. 20. The matter is ripe for disposition.

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to

---

[4] Plaintiff later amended her alleged disability onset date to February 2, 2018. R. 15, 51–52.

[5] The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d

Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has

explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative
> record and asks whether it contains sufficien[t] evidence to support the agency's
> factual determinations. And whatever the meaning of substantial in other contexts,
> the threshold for such evidentiary sufficiency is not high. Substantial evidence, this
> Court has said, is more than a mere scintilla. It means – and means only – such
> relevant evidence as a reasonable mind might accept as adequate to support a
> conclusion.

*Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019) (internal citations and quotation marks omitted);

*see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations

omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and

quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091,

at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot

be set aside merely because the Court "acting de novo might have reached a different

conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli*

*v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported

by substantial evidence, we are bound by those findings, even if we would have decided the

factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*,

2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or

substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d

1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic

or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)

("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and [the] reason(s) for discounting such evidence.") (citing

*Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.

**B.      Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id*. at §§ 404.1509, 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. §§ 404.1520(e),

(f), 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.    ALJ DECISION AND APPELLATE ISSUES

Plaintiff met the insured status requirements of the Social Security Act for purposes of disability insurance benefits through June 30, 2022. R. 18. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between "June 1, 2018, the alleged onset date[,]"[6] and the date of the decision. *Id*.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: cervical myofascial pain syndrome; fibromyalgia; migraines; pseudo-tumor cerebri; obesity; Post Traumatic Stress Disorder ("PTSD"); depressive disorder; and panic disorder. *Id*.  The ALJ also found that the following impairments were not severe: a history of gallstones; a left renal stone; liver lesion; anemia; menorrhagia; urinary incontinence; vulvar lesion; osteoarthritis; allergic rhinitis; E coli bacteremia; right ankle sprain; right plantar calcaneal heel spur; eczema; gastritis;

---

[6] As previously noted, Plaintiff amended her alleged disability onset date to February 2, 2018, R. 51–52, which the ALJ expressly acknowledged on the first page of his decision, R. 15. Despite such acknowledgement, the ALJ continued to refer to June 1, 2018 or the "alleged onset date" or the "alleged disability onset date" rather than to February 2, 2018, or to the "amended alleged onset date." R. 18, 30–31. Although not raised by any party, the ALJ's confusing and inconsistent references in this regard should be clarified on remand.

complex endometrial hyperplasia; bilateral papilledema; atrophic hole of the left eye; asthma; thoracic degenerative disc disease; diabetes mellitus 2; right tendon tear, with posterior endonitis/tenosynovitis, ganglion cyst; and pes planus. *Id*.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 18–20.

At step four, the ALJ found that Plaintiff had the RFC to perform sedentary work subject to various additional exertional and non-exertional limitations. R. 21–29. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a bus driver; composite work as a taxi cab starter and taxi driver; reservation clerk; and composite work as an order clerk and a cashier-checker. R. 29.

At step five and relying on the testimony of the vocational expert, the ALJ found that a significant number of jobs—*e.g.*, jobs as a document preparer, a trimmer, and a tube operator— existed in the national economy and could be performed by Plaintiff despite her lessened capacity. R. 30. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from "June 1, 2018," through the date of the decision. R. 31.

Plaintiff disagrees with the ALJ's findings at steps three and four and asks that the decision be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Moving Brief,* ECF No. 9. The Acting Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief*, ECF No. 14.

IV.     **SUMMARY OF RELEVANT MEDICAL EVIDENCE**

A.     **Jamie Rygielski, D.O.**

On November 4, 2019, Jamie Rygielski, D.O., Plaintiff's treating physician, noted as follows:

> [Plaintiff] presents for follow up for chronic pain due to fibromyalgia. She recently gained back insurance and presents today with complaint of persistent pain that is diffuse, affecting mostly the hips, knees, back and shoulders, worse in the mornings and with activity, associated with fatigue. She saw rheumatology last May who did a full blood panel and diagnosed her with fibromyalgia, and she was subsequently started on gabapentin as her insurance did not cover Lyrica. She notes that even with increasing doses of the gabapentin (now at 600 mg TID) *she continues to have persistent, severe, 10/10 pain most days. It has made it difficult for her to ambulate and she is requesting rx for rolling walker to help her*. She has been taking NSAIDs (ibuprofen) as needed which does help but is not a candidate for regular use given history of GIB and gastritis. She has not followed up with rheumatology since losing her insurance. She notes worsening anxiety and depression which she attributes to being in pain and is not relieved with zoloft 200 mg daily and wellbutrin 300 mg daily as well as alprazolam as needed for anxiety. She denies SI/HI.

R. 658 (emphasis added). Upon physical examination, Dr. Rygielski noted, *inter alia*, musculoskeletal general tenderness and tenderness, pain, and spasm in Plaintiff's cervical, thoracic, and lumbar back. R. 659. Dr. Rygielski increased Plaintiff's medication to address her fibromyalgia pain and prescribed a rollator. R. 660 ("Increase gabapentin to 800 mg TID and add low dose amitriptyline 10 mg nightly for pain due to fibromyalgia. Rx for rollator provided.").

On September 30, 2020, Dr. Rygielski completed a two-page, check-the-box, and fill-in-the-blank form entitled, "Residual Functional Capacity Questionnaire." R. 669–70. Dr. Rygielski diagnosed fibromyalgia, chronic pain, PTSD, DMII, iron deficiency, anemia, and hypertension and indicated that Plaintiff follows up with her doctor every three months. R. 669. Plaintiff's symptoms were listed as "chronic pain in joints and muscles, fatigue, weakness, chronic anxiety and depress[ion.]" *Id*. Her medications (Gabapentin and amitriptyline) caused drowsiness and

functional impairment. *Id*. Dr. Rygielski opined that Plaintiff's symptoms were severe enough to

constantly interfere with the attention and concentration required to perform simple work-related

tasks, and that Plaintiff would need to recline or lie down during a hypothetical 8-hour workday

in excess of typical breaks. *Id*. According to Dr. Rygielski, Plaintiff was unable to walk even one

city block without rest or significant pain; could sit for 20 minutes at a time for a total of 1 hour

during an 8-hour workday; and was unable to stand/walk for any amount of time. *Id*. Dr.

Rygielski also opined that Plaintiff would need a job that permits shifting positions at will from

sitting, standing, and walking, and would need to take a 20- to 30-minute break every 20 minutes

before returning to work. *Id*. Plaintiff could occasionally (less than one-third of the 8-hour

workday) lift and carry 10 pounds and could sustain repetitive reaching, handling, or fingering

for 20 minutes at a time. R. 670. Plaintiff would likely be absent from work more than four times

per month as a result of her impairments or treatment. *Id*. Dr. Rygielski affirmed that Plaintiff's

impairments were reasonably consistent with the symptoms and functional limitations described

in the evaluation. *Id*. Finally, Dr. Rygielski denied that Plaintiff was physically capable of

working an 8-hour day, 5 days a week employment on a sustained basis. *Id*.

### B.      An Nguyen, D.P.M.

On November 24, 2020, Plaintiff presented for examination by An Nguyen, D.P.M., for

pain in her right ankle since August 2020 when she fell into a hole. R. 833–34. Plaintiff reported

sharp pain and limping when she walked. R. 833. Upon physical examination, Dr. Nguyen noted,

*inter alia*, as follows:

> **Musculoskeletal:** R ankle - Pain on palpation to PT tendon from posterior medial
> malleolus and moderate pain elicited to dorsal and medial navicular tuberosity.
> Huebscher maneuver reveals recreation of arch. Moderate non-pitting edema noted
> to medial foot. No ecchymosis noted. Pain to medial longitudinal arch. No pain to
> extensor tendons or Achilles tendon. Decreased ankle dorsiflexion past 90 degrees
> with knee extended and flexed. Complete collapse of medial longitudinal arch R>L.

10

> Full ROM noted to STJ and MTJ without crepitus and/or restriction. Stance examination reveals flexible pronation at RCSP both neutral at NCSP. Abduction forefoot "too many toes sign". Gait analysis reveals antalgic hyperpronation through gait cycle.(-) SHRH, (+) DHR. Muscle strength +5/5 to all muscle groups.

*Id*. Plaintiff "was dispensed one full leg Cam Walker with a pneumatic pump to RLE [right lower extremity]. The brace was properly fitted to the pt and was noted to be comfortable on initial exam. Pt to remain WB [weight bearing] as tolerated with a rolling walker that she has at home." R. 834.

On the same day, Dr. Nguyen addressed a letter addressed "To Whom It May Concern[,]" stating as follows:

> The above named patient Injured ankle and now presents with swelling, pain, and Gait Instability (R26.9) and (S93.492A). Patient was dispensed a Cam Walker today for ankle and foot. The device has a pneumatic device internally which will inflate and decrease swelling and immobilize the patient's ankle and foot. The device is a removable hard cast and should be worn each day for walking to patient's tolerance. Please allow this device for medical necessity for instability, pain, and swelling treatment.

R. 831.

On April 13, 2021, upon follow-up examination for continuing pain to the right ankle, Dr. Nguyen noted that Plaintiff "relates pain when she walks and describes it as sharp in nature. Wears the CAM Walker on and off and states that it is uncomfortable to wear." R. 838. Upon physical examination, Dr. Nguyen noted, *inter alia*, as follows:

> **Musculoskeletal:** R ankle - Pain on palpation to PT tendon from posterior medial malleolus and moderate pain elicited to dorsal and medial navicular tuberosity. Huebscher maneuver reveals recreation of arch. Moderate non-pitting edema noted to medial foot. No ecchymosis noted. Pain to medial longitudinal arch. No pain to extensor tendons or Achilles tendon. Decreased ankle dorsiflexion past 90 degrees with knee extended and flexed. Complete collapse of medial longitudinal arch R>L. Full ROM noted to STJ and MTJ without crepitus and/or restriction. Stance examination reveals flexible pronation at RCSP both neutral at NCSP. Abduction forefoot "too many toes sign". Gait analysis reveals antalgic hyperpronation through gait cycle.(-) SHRH, (+) DHR Pain with DF, Inversion and everaion and no pain with PF. strength +5/5 to all muscle groups.

11

*Id*. An MRI without contrast of the right ankle revealed:

> posterior tibial tendinosis and tenosynovitis with low-grade partial thickness tear at insertion. Mild edema and loss of fat in sinus tarsi with ganglion cysts measuring 17mm x 18mm. Small TN joint eeffusion with dorsal TN ganglion cyst.

> Partial thickness PT tendon tear R, Posterior tibialis tendonitis/tenosynovitis secondary to overuse and poor biomechanics R foot, Ganglion cyst, Pes planus. Hyperpronation, Equinus, Benign Lesions, Fissures, Xerosis[.]

R. 838–39. Dr. Nguyen noted Plaintiff's inconsistency with use of the CAM Walker and "suggested that she continue to wear daily (except when she sleeps or is sitting for long periods) to see if it has helped. Pt is not in severe pain today." R. 839. Plaintiff was fitted with another Cam Walker and brace, was noted to be comfortable on initial exam, and was directed to "ambulate as tolerated with boot but must utilize it for at least 4 weeks consistently." *Id*.

On the same day, in a letter addressed "To Whom It May Concern[,]" Dr. Nguyen stated as follows:

> The above named patient Injured ankle and now presents with swelling, pain, Gait Instability (R26.9). Patient was dispensed a Cam Walker today for ankle and foot. The device has a pneumatic device internally which will inflate and decrease swelling and immobilize the patient's ankle and foot. The device is a removable hard cast and should be worn each day for walking to patient's tolerance. Please allow this device for medical necessity for instability, pain, and swelling treatment.

R. 830.

## V.    DISCUSSION

In the case presently before the Court, the ALJ determined that Plaintiff had the RFC to perform a limited range of sedentary work:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), except the claimant can: occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; frequently balance; occasionally stoop, kneel, crouch, and crawl; never work at unprotected heights or work with

machinery involving exposed moving mechanical parts; and never operate a motor vehicle or operate heavy equipment. Further, the claimant can understand, remember and carry out simple instructions; can perform simple, routine tasks; can make simple work-related decisions; can adapt to changes in routine work settings; can have occasional interaction with coworkers and supervisors beyond any increased interactions initially required to learn the job, and can have occasional interaction with the public.

R. 21. Plaintiff argues, *inter alia*, that substantial evidence does not support this RFC determination because, among other things, the ALJ erred in finding that Plaintiff was able to perform sedentary work, particularly the ability to walk/stand for two hours during a workday. *Plaintiff's Moving Brief*, ECF No. 9, pp. 17–39. Plaintiff specifically challenges the ALJ's consideration of Dr. Rygielski's opinion. *Id*. For the reasons that follow, this Court agrees.

A claimant's RFC is the most that the claimant can do despite her limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). At the administrative hearing stage, it is the ALJ who is charged with determining the claimant's RFC. 20 C.F.R. §§ 404.1546(c), 416.946(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, the ALJ has a duty to consider all the evidence. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). However, the ALJ need include only "credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

In addition, for claims filed after March 27, 2017,[7] the Commissioner's regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. §§ 404.1527, 416.927 *with* 20 C.F.R. §§ 404.1520c(a), 416.927c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources"). Instead, the Commissioner will consider the following factors when considering all medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treating examination, the frequency of examinations, and the purpose of the treatment relationship; (4) the medical source's specialization; and (5) other factors, including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c), 416.920c(c).

The applicable regulations emphasize that "the most important factors [that the ALJ and Commissioner] consider when [] evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id*. at §§ 404.1520c(a), 416.920c(a). As to the supportability factor, the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id*. at §§ 404.1520c(c)(1), 416.920c(c)(1).  As to the consistency factor, the regulations provide that "[t]he more consistent

---

[7] As previously noted, Plaintiff's claims were filed on May 14, 2019.

a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id*. at §§ 404.1520c(c)(2), 416.920c(c)(2).

The applicable regulations further require the ALJ to articulate his "consideration of medical opinions and prior administrative medical findings" and articulate in the "determination or decision how persuasive [he] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record." *Id*. at §§ 404.1520c(b), 416.920c(b). As previously noted, "[s]upportability and consistency are the most important factors. . . . ALJs need not explain their determinations regarding the other factors, but they must discuss supportability and consistency." *Gongon v. Kijakazi*, 676 F. Supp. 3d 383, 394 (E.D. Pa. 2023) (citations omitted); *see also Stamm v. Kijakazi*, 577 F. Supp. 3d 358, 370 (M.D. Pa. 2021) ("Generally, the ALJ may, but is not required to, explain his or her consideration of the other factors, but if there are two equally persuasive medical opinions about the same issue that are not exactly the same, then the ALJ must explain how he or she considered the other factors.").

In the present case, when crafting the RFC determination, the ALJ considered Dr. Rygielski's opinion, but did not find that opinion to be persuasive, reasoning as follows:

> In a September 30, 2020 Residual Functional Capacity Questionnaire from Dr. Rygielsei [sic] noted that she saw the claimant every three months. She diagnosed the claimant with fibromyalgia, chronic pain, PTSD, diabetes mellitus type II, iron deficiency anemia. and hypertension. She noted the claimant had symptoms that included chronic pain in the joints and muscles as well as fatigue, weakness, chronic anxiety and depression. It was opined that the claimant had constant symptoms that were severe enough to interfere with the attention and concentration, and that the claimant. It was noted that the claimant took gabapentin and amitriptyline which caused drowsiness and functional impairment. The doctor opined that the claimant would need to recline or lie down during an eight-hour workday, in excess of typical break and lunch periods. She reported that the claimant could not walk a city block without rest or significant pain. She reported that the claimant could sit for one hour and stand and walk for no hours in an eight-hour workday. She also opined that the claimant could occasionally lift less than 10 pounds and could never lift 10 to 50

pounds. She reported that the claimant was limited with doing repetitive reaching, handling or fingering, opining that the claimant could do these things 20 minutes per episode, per day. Dr. Rygielsei [sic] indicated that the claimant would need a job that permitted shift of positions at will from sitting, standing or walking. She also indicated that the claimant would need to take unscheduled breaks during the hour workday, every 20 minutes, with each break lasting 20 to 30 minutes before returning to work. She reported that the claimant would be absent more than four times a month due to her impairments or treatment. The doctor concluded that the claimant was not capable of working an eight-hour workday, five days a week on a sustained basis (Exhibit 6F).

I have considered the opinion of Dr. Rygielsei [sic] but do not find it to be persuasive. I find Dr. Rygielski['s]pinion is *not consistent with her treatment records. Moreover it does not concur with the claimant's overall treatment history.* The doctor finds limitations present that would be severe enough to interfere with attention and concentration to perform even simple work-related tasks. For example, no limitations are noted with attention and concentration in the treatment records. At one point, Dr. Rygielski noted normal cognition and memory (Exhibit 2F/34). Additional records also show normal memory (Exhibit 1F/5). I also note that the claimant has not had any specialized treatment with regard to her psychiatric impairments. *With regard to Dr. Rygielski's physical limitations assessed, I do not find this opinion to be persuasive. The physical limitations are also not consistent with the doctor's treatment records or with the overall record.* For example, a need for breaks every twenty minutes, lasting 20-30 minutes is *not supported by Dr. Rygielsei's* [sic] *own treatment records, or by the overall record in this case. The doctor notes a history of generalized pain but never refers to specific limitations. Moreover, the claimant's daily living activities negate the significant limitations given by the doctor. The claimant remains capable of most basic daily living activities. While she reported some limitations, she remains capable of basic self-care, limited shopping and laundry.* The clamant further reported that she is able to manage her own money and do some cooking with the microwave. *She also reported spending her days reading, watching television outside* (Testimony, Exhibit 4F). Regardless, I have considered the claimant's limitations when determining the residual functional capacity.

R. 27–28 (emphasis added). Plaintiff challenges this evaluation on a number of bases, including,

*inter alia*, that the ALJ did not cite to any inconsistencies when finding this opinion

unpersuasive; that the ALJ acknowledged that Dr. Rygielski's notes refer to a history of pain but

discounts the opinion because that physician "never refers to specific limitations"; and that the

ALJ overstated or misstated Plaintiff's daily activities. *Plaintiff's Moving Brief*, ECF No. 9, pp.

34–39. In response, the Acting Commissioner simply recounts Dr. Rygielski's treatment records

from May 2019 and November 2019, but does not address that physician's opinion, nor does the

Acting Commissioner otherwise specifically engage with Plaintiff's challenges in this regard.

*See generally Defendant's Brief*, ECF No. 14.

Plaintiff's challenges are well taken. First, in discounting Dr. Rygielski's opined physical

limitations, the ALJ found that such limitations were "not consistent . . . by [sic] the overall

record in this case." R. 28. The ALJ, however, does not cite to any record evidence reflecting an

inconsistency. *See id*. Notably, the ALJ's recitation of the medical evidence reflects, *inter alia*,

injuries to Plaintiff's ankles; back sprain with related pain; fibromyalgia-related pain; reduced

range of motion; antalgic gait; and prescriptions for a rollator and CAM walking boot. R. 22–25.

The ALJ reasoned that Plaintiff's daily activities such as "basic self-care, limited shopping and

laundry" as well as "reading, watching television outside[,]" "negate the significant limitations"

offered by Dr. Rygielski. R. 28. However, the ALJ has not explained—and it is not apparent to

the Court—how these activities "negate" that physician's opined physical limitations. *See id*. As

a preliminary matter, and as Plaintiff points out, *Plaintiff's Moving Brief*, ECF No. 9, p. 38 n.17,

the ALJ overstated Plaintiff's activities. For example, Plaintiff testified that she "shower[s] when

I feel like I can[,]" which is "usually less than once a week. I don't change my clothes very

often." R. 65. Plaintiff also testified that she prepares her lunch but that her roommates pre-make

breakfast for her. R. 64–65. While it is true that Plaintiff shopped, she testified that she goes with

her roommate to pick up a grocery order. R. 66. She rarely goes into the grocery store and, when

she does, she uses an electric cart. *Id*. A roommate also helps her with laundry. R. 73. This

overstatement of Plaintiff's daily activities undermines the ALJ's finding that Plaintiff's

activities were inconsistent with Dr. Rygielski's opinion. *See Blair v. Colvin*, No. 3:15-CV-1974,

2016 WL 1089223, at *15 (M.D. Pa. Mar. 21, 2016) ("The ALJ's overstatement of Plaintiff's

activities of daily living, without an explanation for the elimination of the qualifying aspects of

Plaintiff's testimony and statements, renders his reliance on her activities of daily living

problematic."). The ALJ also stated that Plaintiff "reported spending her days reading, watching

television outside[,]" but it is not clear how these sedentary activities—reported in September

2019, approximately one year prior to Dr. Rygielski's opinion—undermine that physician's

opined physical limitations. R. 28 (citing Exhibit 45 (reflecting Plaintiff's statements during a

consultative examination taken on September 12, 2019)); *cf. Holler v. Barnhart*, 102 F. App'x

742, 744 (3d Cir. 2004) ("The ALJ does not explain why he found that Holler's activities

[cooking, taking walks, feeding and bathing her dogs, performing household chores, shopping,

driving, singing in her church's choir and acting as the church's treasurer] were inconsistent with

an inability to work at the medium level although both doctors account for Holler's activities and

still conclude that Holler was capable of light work at most. Rather, the ALJ appears to have

concluded that he could better interpret Holler's history than both of the physicians of record.").

Finally, although the reviewing state agency medical consultants opined in October 2019 and

January 2020 that, *inter alia*, Plaintiff was capable of performing light exertional work, R. 100–

53,[8] those opinions pre-dated Dr. Rygielski's opinion of September 30, 2020, R. 27–28, 669–70,

as well as Plaintiff's August 2020 ankle injury, continuing ankle pain, and antalgic gait in 2020

and 2021, and Dr. Nguyen's prescription of a CAM boot walker in November 2024, R. 24, 831–

38.

     Moreover, even if the ALJ had properly considered the consistency factor, he did not

sufficiently consider the supportability factor when evaluating Dr. Rygielski's opinion. As a

---

[8] The reviewing state agency consultants stated that "ADL and self care difficulties/limitations are noted due to reported physical challenges, in both 1st and 3rd party Function reports[,]" R. 109, 121, 132, 137, 146, 151, but the Court could not locate those function reports in the record.

preliminary matter, the ALJ erroneously referred to the consistency of that opinion when he actually attacked the supportability of that opinion. *See* R. 28 (stating that this opinion was "not *consistent* with the doctor's treatment records") (emphasis added); *see also* 20 C.F.R. §§ 404.1520c(c)(1), (2), 416.920c(c)(1), (2); *Pipkin v. Kijakazi*, No. CV 22-2-E, 2023 WL 411291, at *1 (W.D. Pa. Jan. 25, 2023) ("'[S]upportability relates to the extent to which a medical source has articulated support for the medical source's own opinion, while consistency relates to the relationship between a medical source's opinion and other evidence within the record.'") (quoting *Cook v. Comm'r of Soc. Sec.*, No. 6:20-CV-1197, 2021 WL 1565832, at *3 (M.D. Fla. Apr. 6, 2021)). Moreover, the ALJ did not articulate how Dr. Rygielski's treatment records did not support that physician's opinion. R. 21-29. For example, the ALJ noted, *inter alia*, that Dr. Rygielski treated Plaintiff for fibromyalgia in November 2019, at which time she noted gait problems and prescribed a rollator, *id.*; and that Dr. Rygielski continued to treat Plaintiff for fibromyalgia in 2020[9] and 2021, R. 25. Although the ALJ complains that Dr. Rygielski "notes a history of generalized pain but never refers to specific limitations[,]" R. 28, it is not entirely clear what the ALJ intends by this criticism. To the extent that he meant to refer to Dr. Rygielski's opinion, this Court has already detailed above the specific functional limitations opined by that physician. R. 669–70. To the extent that the ALJ suggests Dr. Rygielski's treatment notes should have expressed fibromyalgia's effects in a different manner, the ALJ's criticism in this regard misses the mark. As previously noted, the ALJ specifically found that, *inter alia*, fibromyalgia

---

[9] Although the ALJ refers to Dr. Rygielski treating Plaintiff on April 8, 2020, the cited exhibit does not reflect treatment on that date. R. 25 (citing Exhibit 14F, R. 842–910 (reflecting treatment from July 14, 2020, through January 29, 2021)). However, that physician did treat Plaintiff for fibromyalgia in, *inter alia*, May 2020. Exhibit 9F/1–3, R. 688–90. This incorrect record citation, as well as the ALJ's additional inaccurate citations noted below, made the Court's review of this action unnecessarily more difficult and time-consuming.

was a severe impairment. R. 18; *see also* SSR 12-2p (explaining that fibromyalgia "is a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months"); *Foley v. Barnhart*, 432 F. Supp.2d 465, 475 (M.D. Pa. 2005) ("These tender points [that characterized fibromyalgia] are called "trigger points." . . . . All points may not be painful at all times in every person. . . . The pain may vary in intensity according to the time of day, weather, activity level, stress, and sleep patterns.") (citations omitted). "[I]n a disability determination involving fibromyalgia, it is error to require objective findings when the disease itself eludes such measurement." *Foley*, 432 F. at 476 (citations omitted); *id*. at 475 (noting that the ALJ improperly discounted a physician's assessment of the claimant's condition on the ground that "it was not supported by any independent findings and observations" and stating that "[t]he problem with looking for independent findings and observations is that fibromyalgia is a disease which is notable for its lack of objective diagnostic techniques") (cleaned up); *Henderson v. Astrue*, 887 F. Supp. 2d 617, 636 (W.D. Pa. 2012)  (stating that "it is error for an ALJ to rely on the lack of objective evidence to reject a treating physician's opinion in a disability case involving a diagnosis of fibromyalgia due to the nature of the disease" and finding that the ALJ "erred by failing to address the unique circumstances presented by a claimant alleging disability based on a diagnosis of fibromyalgia") (citations omitted). Accordingly, with no citation to specific treatment record or discussion of how such records do not support Dr. Rygielski's opinion, the Court cannot conclude that substantial evidence supports the ALJ's evaluation of this physician's opinion. *See Sanford v. Comm'r of Soc. Sec*., No. CIV. 13-0366 NLH, 2014 WL 1294710, at *2 (D.N.J. Mar. 28, 2014) ("The Third Circuit has held that access to the Commissioner's reasoning

is [ ] essential to a meaningful court review.") (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Furthermore, the Court cannot conclude that the ALJ's failure to properly consider Dr. Rygielski's opinion is harmless. This is particularly so because Dr. Rygielski opined, *inter alia*, that Plaintiff could sit for a total of one hour, could not stand/walk in an 8-hour workday, would need to take a 20 or 30-minute break every 20 minutes, R. 669, and would be absent more than four times per month. R. 670; *see also* 20 C.F.R. §§ 404.1567(a) ("Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."), 416.967(a) (same); SSR 83-10, 1983 WL 31251, at *5 ("'Occasionally' means occurring from very little up to one-third of the time. Since being on one's feet is required 'occasionally' at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday."). The doctor's opined limitations take on greater significance when considering that the vocational expert testified that there would be no competitive employment for an individual who was off task 15% or more during the workday, who would be absent two or more times per month, and who could sit, stand, and walk for a combined total of up to only six hours in an 8-hour workday. R. 79.

This Court therefore concludes that remand of the matter for further consideration of these issues is appropriate. Moreover, remand is appropriate even if, upon further examination of Dr. Rygielski's opinion and the RFC determination, the ALJ again concludes that Plaintiff is not entitled to benefits. *Cf. Zuschlag v. Comm'r of Soc. Sec. Admin.*, No. 18-CV-1949, 2020 WL 5525578, at *8 (D.N.J. Sept. 15, 2020) ("On remand, the ALJ may reach the same conclusion,

but it must be based on a proper foundation."); *Jiminez v. Comm'r of Soc. Sec.*, No. CV 19-12662, 2020 WL 5105232, at *4 (D.N.J. Aug. 28, 2020) ("Once more, the ALJ did not provide an adequate explanation that would enable meaningful review, and the Court once more cannot determine what role lay speculation played in the ALJ's rejection of this detailed functional assessment from Dr. Marks."); *Cassidy v. Colvin*, No. 2:13-1203, 2014 WL 2041734, at *10 n.3 (W.D. Pa. May 16, 2014) ("Nevertheless, that the ALJ may have misinterpreted or misunderstood Dr. Kaplan's findings with regard to Plaintiff's postural activities does not absolve her of her error. Rather, it highlights the need for an ALJ to fully explain her findings. Otherwise, the district court is left to engage in this sort of speculation about how an ALJ arrived at her decision.").

Finally, the Court notes that Plaintiff asserts other errors in the Acting Commissioner's final decision. *See generally Plaintiff's Moving Brief*, ECF No. 9. Because the Court concludes that the matter must be remanded for further consideration of Dr. Rygielski's opinion and the RFC determination, the Court does not consider those claims. However, without expressing any opinion on the merits of such challenges, the Court suggests that, on remand, it would be helpful for the ALJ to address Plaintiff's obesity at step three of the sequential evaluation, *see* R. 18–20 (omitting any mention of Plaintiff's obesity at step three), and to clarify his consideration of Plaintiff's use of a rollator and CAM walker boot and any related ability to ambulate effectively. For example, the ALJ stated:

> I note the indications for use of a rolling walker in the record, and that the claimant was also fitted with a CAM walker boot; however, while instructed to wear the CAM walker boot daily, it was noted that the had not used it consistently and she was therefore not entirely compliant with treatment (Exhibit 13 F/4, 5, 8, 13). An X. Nguyen, DPM, a podiatrist, noted *in November, 2020, that the claimant was limited to weight bearing as tolerated*, with a rolling walker she had at home (Exhibit 13F/5, 8). In April, 2021, the claimant was *fitted with a CAM walker boot*. with a pneumatic pump, although noted not to have been using it consistently, and

the *claimant was instructed to wear it daily*. It was *opined* that the *claimant could ambulate at tolerated with the boot, for at least four weeks, and without wearing the CAM walker boot when sleeping or when sitting for long periods* (Exhibit 13F/4, 13). While I find *Dr. Nguyen's opinions* to be persuasive as to the claimant's function at the time of the assessments, *based upon the overall record I do not find these opinions to be persuasive as to the presence of particular limitations for any continuous period of at least twelve months during the period at issue in this case. Based upon the overall record, I do not find that the claimant required the use of a rolling walker or use of a CAM walker boot for any continuous period of at least twelve months during the relevant period*, and note in this regard that most medical visits do not note the use of the walker.

R. 28–29 (emphasis added). As a preliminary matter, it is not immediately apparent that Dr. Nguyen's "opinions" are actually medical opinions subject to the applicable regulations; rather they appear to "[o]ther medical evidence." 20 C.F.R. § 404.1513(a)(3) ("Other medical evidence is evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis."), 416.913(a)(3) (same). In addition, when recounting the medical history regarding Plaintiff's ankle pain, her use of the CAM walker boot, and Dr. Nguyen's treatment records, the ALJ at times referred to the wrong date, employed confusing language, and cited to the wrong exhibits. R. 24 (stating in confusing fashion that "March 13, 2020 records show the claimant was falling of the right ankle pain" and citing to "Exhibit 13/F12[,]" which is actually a record dated April 13, 2021, from Dr. Nguyen, R. 838), 25 (referring to "an April 13, 2020 letter" authored by Dr. Nguyen—and providing no citation to the record—but that physician's letter was dated April 13, 2021, R. 830; referring to treatment records from October 2020 and November 2020 and providing a cite to only "Exhibit 3F/4[,]" R. 644, which bears only this statement" "Exhibit 3F Page 4 of 10 WAS REMOVED AS AN EXHIBIT BY THE APPEALS COUNCIL BECAUSE IT DOES NOT REFER TO THE CLAIMANT"). The ALJ's errors in this regard, coupled with his reliance on a

23

possible mischaracterization of Dr. Nguyen's clinical findings/treatment as an opinion, may undermine the ALJ's conclusion that Plaintiff did not require the use of a rolling walker or use of a CAM walker boot for any continuous twelve-month period during the relevant period. In addition to these issues, it is particularly difficult to understand and evaluate the ALJ's reasoning in this regard against a backdrop of several ankle injuries, gait problems, and assistive devices throughout the relevant period, including, *inter alia*, pain in the left ankle following a fall in or around January 2018, R. 569–70; left ankle sprain following a fall in or around April 2018, R. 450, 452–54; pain, gait problem, and prescription for a rollator in November 2019, R. 658–660; pain in ankle on January 29, 2021, R. 850; sprained right ankle related to fall and "gait problem" in September 2020, R. 875–76, 879, 886; pain in right ankle in October 2020, R. 832; pain in right ankle after fall in a hole and authorization for CAM walker boot in November 2020, R. 831–35; continued pain in right ankle in March 2021, with MRI of that area reflecting, *inter alia*, "[p]osterior tibial tendinosis and tenosynovitis with low-grade partial-thickness tear at the Insertion" and ganglion cysts, R. 836–37; and in April 2021, following up with pain to her right ankle "since August when she fell into hole[,]" R. 838. In making these observations, the Court merely intends to encourage the ALJ to further clarify his citations on remand; the Court expresses no opinion as to the merits of Plaintiff's challenges based on these issues.

For all these reasons, the Court **REVERSES** the Acting Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

Date:  March 11, 2025                          *s/Norah McCann King*
                                               NORAH McCANN KING
                                               UNITED STATES MAGISTRATE JUDGE